IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NATIONWIDE MUTUAL**
**INSURANCE COMPANY**,

      Plaintiff,

      vs.                        No. 08cv325 MCA/RHS

**MAXINE E. AND RALPH GONZALES**
**as personal representatives of**
**the estate of PAUL GONZALES,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Plaintiff's Motion for Summary Judgment* [Doc. 14], filed September 15, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the *Motion* and denies Defendants' request for Rule 56 relief.

## I. BACKGROUND

This insurance-coverage dispute arises out of a fatal automobile accident that occurred on November 11, 2006. [Doc. 15; Exh. B, "State of New Mexico Uniform Crash Report"]. Mr. Paul Gonzales and four members of his family were killed, and a fifth family member was injured, when the vehicle in which they were traveling collided with one being operated by an intoxicated driver. [Id., Exh. B at unnumbered 2-4]. The intoxicated driver, who survived the accident but succumbed to his injuries the following day, was heading

south in a northbound lane of Interstate 25 near Santa Fe, New Mexico. Mr. Gonzales drove north in the same lane. [Id., Exh. B at unnumbered 2]. According to the police report, "for reason(s) unknown[,]" the two drivers each failed to observe the approach of the other car. The two vehicles collided head-on. The intoxicated driver's vehicle carried only minimum liability insurance limits. [Doc. 18 at 1].

When the insurance policy that is at the center of the instant dispute was procured from Plaintiff Nationwide Mutual Insurance Company ("Nationwide"), as well as at the time of his death, Paul Gonzales was an officer, director, and shareholder/owner of a family-owned business called Gonzales Family, Inc., d/b/a Alternative Home Health Care ("Gonzales Family, Inc."). [Doc. 15 at 1]. The policy that Nationwide had issued to Gonzales Family, Inc. provided coverage for business automobiles, as specifically provided by the terms of the policy. [Id. at 2]. The policy identifies 13 automobiles that are defined as "covered autos," and each covered auto carries $1,000,000 of uninsured motorist coverage. [Id.; Exh. A]. A separate premium is paid for each listed vehicle. [Id.; Exh. A at unnumbered 6–8.]. It is undisputed that Mr. Gonzales was not driving one of the "covered autos" listed in the policy when the accident occurred; instead, he was driving his personal vehicle. [Doc. 15 at 4; Doc. 18 at 3].

The policy at issue here included the *New Mexico Uninsured Motorists Coverage— Bodily Injury and Property Damage—Nonstacked* endorsement ("the endorsement"). [Doc. 15; Exh. B at unnumbered 13]. The endorsement states that Nationwide "will pay all sums

2

the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle'" and goes on to provide, in pertinent part, as follows:

> B. Who is An Insured
>
> If the Named Insured is:
>
> 1. An individual, then the following are "insureds":
>
>> a. The Named Insured and any "family members".
>> b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto" that is out of service because of its breakdown, repair, servicing, "loss" or destruction.
>> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>> a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto" that is out of service because of its breakdown, repair, servicing, "loss" or destruction. This includes the Named Insured's partners (if the Named Insured is a partnership), or members (if the Named insured is a limited liability company), "employees", directors or shareholders;
>> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>> c. The Named Insured for "property damage" only.

[Id.; Exh. B at unnumbered 13].

On March 26, 2008, after a claim for uninsured motorist coverage had been made by Defendants Maxine and Ralph Gonzales as personal representatives of the Estate of Paul Gonzales, Nationwide filed a *Complaint for Declaratory Judgment*. [Doc. 1]. In its *Complaint*, Nationwide asserts that the Estate of Paul Gonzales is not entitled to recover

uninsured motorist benefits because, pursuant to the terms of the policy at issue, Mr. Gonzales was not an "insured," nor was he "occupying a covered auto at the time of" his death. [Id. at 3].

On September 15, 2008, Nationwide filed its summary-judgment motion on the ground that "[t]he plain terms of the policy exclude Paul Gonzales from coverage. . . ." [Doc. 15 at 2]. Defendants respond that, as an employee, director, and shareholder of Gonzales Family, Inc., Mr. Gonzales was "expressly included" as an insured under the terms of the endorsement. [Doc. 18 at 5]. In the alternative, Defendants ask that the Court defer a ruling on Nationwide's summary-judgment motion and permit them to "conduct discovery into whether it was reasonable for them to expect UM/UIM coverage for Ralph Gonzales, Maxine Gonzales, Paul Gonzales, and Ashley Gonzales, given that they were the only members of Gonzales Family, Inc., were immediate family members, and were the primary drivers of the vehicles insured by the Nationwide Mutual policy." [Doc. 18 at 10–11].

## II. ANALYSIS

### A. Defendants' Rule 56 Request

Defendants request that a ruling on Nationwide's motion for summary judgment be deferred and that they be permitted, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, to "conduct discovery into whether it was reasonable for them to expect UM/UIM coverage for Ralph Gonzales, Maxine Gonzales, Paul Gonzales, and Ashley Gonzales, given that they were (1) the only members of Gonzales Family, Inc.;

(2) immediate family members; and (3) the primary drivers of the vehicles insured by the Nationwide Mutual policy." [Doc. 18 at 10–11]. Defendants argue that they do not have "the original application for insurance, the underwriting file, or any other document which may be contained in the files of Nationwide Mutual or its sales agent's file" and that "it is important to discover what Nationwide Mutual and its agents looked at in issuing the policy, what they conveyed to Gonzales Family, Inc., what representations were made and relied upon in the underwriting process, and how the policy at issue was ultimately issued." [Id. at 11].

> Rule 56 (f) provides as follows:
>
>> If the party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>>
>> (1) deny the motion;
>> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>> (3) issue any other just order.

Fed.R.Civ.P. 56(f).

The party invoking Rule 56(f) bears the burden and must show *how* additional time will enable it to rebut the movant's allegations. Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993). Rule 56(f) "may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." Jensen, 998 F.2d at 1554 (citation and quotation marks omitted). It also is insufficient to allege that evidence is in the hands of the opposing party. Jensen,

5

998 F.2d at 1554.

In support of their request for a deferred ruling, Defendants offer the affidavit of Ralph Gonzales, which states that "[b]ecause Gonzales Family, Inc. was a family-owned business, it was the expectation of Gonzales Family, Inc., in procuring the policy at issue in this suit, that Paul would be an insured under that policy." [Doc. 18; Exh. 1 at 2]. Ralph Gonzales further states in his affidavit that "[a]t no time was anyone from Gonzales Family, Inc. informed that the officers, directors, and shareholders . . . were not specifically insured for uninsured motorist coverage on the Nationwide Mutual policy[,]" and that it was Gonzales Family. Inc.'s "understanding, expectation, and belief" that they were insureds. [Id.; Exh. 1 at 2]. Defendants also offer the affidavit of counsel, which states that Defendants require additional discovery consisting of the application, underwriting file, and "any other documents in the Nationwide Mutual file pertaining to the policy at issue in this matter." [Id.; Exh. 3 at 1-2]. The affidavit further states that such discovery will permit Defendants to establish that they reasonably expected the policy to afford UM/UIM coverage to Mr. Gonzales, irrespective of whether he was occupying a covered auto. [Id.; Exh. 3 at 2].

"The doctrine of reasonable expectations may be invoked when the language of an insurance policy or representations of the insurance company lead an insured to reasonably expect coverage." Rehders, 135 P.3d at 246. "The doctrine is also available where policy language is ambiguous . . . and when the dynamics of the insurance transaction make way

for its application." Id. (internal quotation marks and citations omitted). "On the other hand, judgment against an insured is appropriate as a matter of law when the insured's expectations do not extend to the facts of the case, or when the insured's expectations conflict with the clear language of the policy itself." Id. at 247 (citations omitted).

Defendants' affidavits are not sufficient to make the required Rule 56(f) showing. First, a party's Rule 56(f) burden cannot be met with allegations that evidence is in the hands of the opposing party. See Jensen, 998 F.2d at 1554. Second, the information that would be most relevant to a determination of Gonzales Family, Inc.'s expectations is information that, if it exists, is most likely to be held by Defendants, specifically, information regarding representations or actions by Nationwide or its agents that led Gonzales Family, Inc. to hold expectations of a particular type of coverage. Given that two of the Gonzales Family, Inc. shareholders (and officers), Ralph and Maxine Gonzales, are parties to this action, it is not clear what they expect to learn from Nationwide's files regarding their *own* expectations. Ralph Gonzales' affidavit states that Gonzales Family, Inc. had an expectation that Paul Gonzales was insured. [See Doc. 18; Exh. 1 at 2]. In fact, Paul Gonzales *was* an "insured" under certain circumstances. As Nationwide acknowledges, Paul Gonzales would have been an "insured" if he had been in a covered auto at the time of the accident. [Doc. 19 at 4.] Defendants have presented no evidence that they were confused by the terms of the policy, and there is nothing in their affidavits to suggest that Nationwide said or did anything to lead Gonzales Family, Inc. to expect that there would be uninsured motorist coverage for its

principals in their personal vehicles.  Third, Defendants' expectations that Paul Gonzales would be covered even if he were not riding in a covered auto are in conflict with the plain language of the policy.  Finally, Defendants do not claim that the policy is ambiguous.  Because this Court can conclude as a matter of law that the purported expectation of coverage was not reasonable, additional discovery under these circumstances is not necessary.

However, this matter warrants further discussion.  As previously noted, Defendants appear to invoke provisions of Rule 56(f) of the Federal Rules of Civil Procedure inasmuch as they seek an opportunity "to conduct discovery into whether it was reasonable for them to expect UM/UIM coverage. . . ." [Doc. 18 at 10].  The seek deferment by the Court of its ruling on the pending Motion "until all necessary discovery can be completed." [Id. at 11].

Defendants correctly point out that at the time of the filing of their *Response* on October 14, 2008 [Doc. 18], discovery had not closed.  In fact, in the *Scheduling Order* entered by the Honorable Robert H. Scott on August 27, 2008, the parties were afforded until February 13, 2009, to complete discovery, and until April 2, 2009 to file their dispositive motions.  A review of the Docket in this case reveals that the pending *Motion* was the only motion filed in this case.  The said *Motion* was filed on September 15, 2008; the *Response* thereto was filed on October 14, 2008; and Plaintiff's *Reply* was filed on October 29, 2008.  No other motions were filed at any time during the pendency of this matter, and especially within the time limit set for the filing of dispositive motions, April 2, 2009.  Neither party

8

sought leave of the Court for extensions of time to file dispositive motions or for extensions of time in which to complete discovery. The parties had until February 13, 2009, (some four months after the filing of Defendants' *Response*) in which to initiate, undertake and complete any discovery that they deemed necessary. While it is unclear from the Docket whether any discovery was undertaken by the parties, what remains clear is that any evidence procured through the discovery process could have resulted in the supplementation or amendment of their respective *Motion/Response/Reply*, by way of reference to, for example, deposition testimony, answers to interrogatories or other evidence deemed to support their respective positions. No such amendment or supplementation was sought.

In consideration of the foregoing circumstances, and in consideration of the fact that the parties have been afforded a full and fair opportunity to conduct any desired discovery, the Court now deems the pending *Motion* ripe for consideration on its merits, and will now proceed to address the merits of the issues raised.

### B(1).  Summary Judgment Standard

The Court may enter summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir.1995) (*quoting* Fed.R.Civ.P. 56(c)).  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving

party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at 248.

When, as here, the movant is also the party bearing the burden of persuasion with regard to the claim on which a summary judgment is sought, the movant must show that the record as a whole satisfies each essential element of its case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D.Kan. 1993).  The admissions in a party's answer to a complaint are binding for purposes of determining whether the movant has made such a showing.  See Missouri Housing Dev. Comm'n v. Brice, 919 F.2d 1306, 1314-15 (8th Cir. 1990).  Similarly, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)).

Apart from these limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B(2).  Construction of Insurance Contracts

Insurance contracts are to be construed in the same manner as other contracts. Rummel v. Lexington Ins. Co., 945 P.2d 970, 976 (N.M. 1997). The contract must be construed as a whole, including its declarations, endorsements, and any other attachments. Id. "Ambiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the policy is illogical, or when a particular matter of coverage is not explicitly addressed in the policy." Id. (citation omitted). To determine whether a provision is reasonably subject to competing interpretations, the court should ask what a reasonably intelligent, non-lawyer lay person might understand the policy to mean, in light of the usual and natural meaning of words and the circumstances prior to and in making the policy. Id.

As previously explained, the language defining who is an "insured" for purposes of uninsured motorist coverage in this case is contained in paragraph B of the uninsured motorist endorsement:

    B.    Who is An Insured

    If the Named Insured is:

    1. An individual, then the following are "insureds":

> a. The Named Insured and any "family members".
> b. Anyone else "occupying a covered "auto" or a temporary substitute for a covered "auto" that is out of service because of its breakdown, repair, servicing, "loss" or destruction.
> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

    2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

> a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto" that is out of service because of its breakdown, repair, servicing, "loss" or destruction. This includes the Named Insured's partners (if the Named Insured is a partnership), or members (if the Named insured is a limited liability company), "employees", directors or shareholders;
> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
> c. The Named Insured for "property damage" only.

[Doc. 15; Exh. B at unnumbered 13].

Paragraph B.1 applies only if the "Named Insured" is an individual. Both sides in the instant action agree that since the "Named Insured" here (*i.e.*, Gonzales Family, Inc.) is a corporation, paragraph B.2 is applicable. The parties further agree that the relevant provision is contained in subparagraph B.2.a. [See Doc. 18 at 5-6; Doc. 19 at 3-4].

Subparagraph B.2.a. states that coverage is afforded to anyone occupying a covered "auto" or a temporary substitute for a covered "auto." It is undisputed that Mr. Gonzales was driving his personal vehicle—not a covered auto or a temporary substitute for a covered

auto. [See Doc. 15 at 4; Doc. 18 at 3]. Accordingly, coverage would appear to be precluded for this incident. Defendants, however, focus on the second sentence of paragraph B.2.a., which states: "This includes the Named Insured's . . . 'employees', directors or shareholders." They argue that by virtue of this sentence, uninsured motorist coverage is afforded to the Named Insured's employees, directors, and shareholders even if they are not occupying a covered auto. Defendants rely on Rehders v. Allstate Insurance Company,135 P.3d 237 (N.M. Ct. App. 2006) as support for their position that employees, directors, and shareholders of a corporation need not be occupying a covered auto to qualify as insureds for purposes of uninsured motorist coverage. Nationwide also relies on Rehders to support its converse position that Mr. Gonzales is not an insured under these circumstances.

Rehders is similar in many respects to this case. Rehders also involved a commercial auto policy where the named insured was an incorporated family business. The adult son of the business owners was involved in an automobile accident with an uninsured motorist. He made a claim for uninsured motorist coverage under a corporate commercial auto policy that was issued by Allstate and that insured seven company vehicles. As in this case, the son was not occupying a covered auto at the time of the accident. Unlike this case, however, the son was not an officer, employee, stockholder, or agent of the corporation at the time of the accident. Rehders, 135 P.3d at 239.

The district court granted summary judgment in favor of the son, holding that he was entitled to "stack" coverage. The Court of Appeals reversed, holding that the district court erred by reaching the stacking question without first resolving the question of whether the

13

son was an "insured" under the policy. Rehders, 135 P.3d at 241. The Court of Appeals then went on to determine that the son was not an insured, and therefore was not entitled to coverage. Rehders, 135 P.3d at 244.

The Court of Appeals began its analysis with the language of the policy. The UM endorsement established two classes of insureds: Class 1 and Class 2. Class 1 insureds included the "Named Insured" and any "family members." Class 1 insured status was available for purposes of UM coverage only if the "Named Insured" was an individual. Rehders, 135 P.3d at 242–43. Because the "Named Insured" in Rehders was a corporation, the son did not qualify as a Class 1 insured. Id. at 243. Class 2 insureds were specifically described as "the Named Insured's partners (if the Named Insured is a partnership), or members (if the Named Insured is a limited liability company), 'employees', directors or shareholders. . . ." Id. Because the son was not an employee, director, or stockholder of the insured corporation, he was not a Class 2 insured. Id. The Court of Appeals thus concluded that the son was not entitled to coverage because he was neither a Class 1 nor a Class 2 insured. Id..

Defendants in this case argue that since Paul Gonzales was an officer and employee of Gonzales Family, Inc., Rehders compels the conclusion that he is an insured. [Doc. 18 at 7-9 ("It is undisputed that at the [relevant times, Paul Gonzales] was an employee, officer, director, and shareholder of Gonzales Family, Inc. As such, he is expressly included in the Nationwide Mutual policy's definition of who is an 'insured'. . . .")].  Rehders, however, did not address the question that is presented here, which is whether an officer or employee

14

of the corporation is an "insured" even if he is not in a covered auto. An earlier case, however, has specifically rejected Defendants' argument.

In Herrera v. Mountain States Mut. Cas. Co., an insured's employee sought coverage under his employer's automobile policy for injuries his daughter suffered in an accident involving a vehicle owned by the employee. Herrera v. Mountain States Mut. Cas. Co., 846 P.2d 1006 (N.M. 1993). Like Defendants in this case, the Herreras argued that since the named insured was a corporation, each of the 32 employees of the corporation was also an insured. Id. at 1067. The New Mexico Supreme Court held, however, that since the employee was not a named insured, his daughter could not be a Class 1 insured and, further, that she could not be a Class 2 insured because she was not occupying a covered vehicle. Id. at 1068. The same reasoning applies here. Paul Gonzales was not a named insured, and therefore did not have Class 1-type coverage. He also was not occupying a covered vehicle, and therefore was not analogous to a Class 2 insured.

Though Rehders did not address the precise question at issue here, it does, along with other New Mexico cases, offer guidance on the significance and application of the Class 1/Class 2 distinction under New Mexico law. The Nationwide policy under consideration in this case does not use the "Class 1" and "Class 2" terminology, but it makes the same distinctions as the Rehders policy and indeed it is a distinction that is generally recognized by New Mexico common law jurisprudence.

For policies in which the "Named Insured" is an individual, the Nationwide UM endorsement identifies a category of insureds consisting of the "Named Insured and any

15

'family members'." [Doc. 15; Exh. B at unnumbered 13]. This category is what New Mexico law designates as Class 1 insured. Rehders, 135 P.3d at 245–46. Class 1 insureds are recognized as having UM coverage no matter what their location at the time of an accident; in other words, without regard to whether they are occupying a covered vehicle. Rehders, 135 P.3d at 245–46; Gamboa v. Allstate Ins. Co., 726 P.2d 1386, 1388 (N.M. 1986) ("First class insureds are covered by policies no matter where they are or in what circumstances they may be; coverage is not limited to a particular vehicle."). As in Rehders, Class 1-type status is available under the Nationwide UM endorsement only if the "Named Insured" is an individual. [Doc. 15; Exh. B at unnumbered 13]. This is commonly, if not universally, the case. See, e.g., Bonham v. Indem. Ins. Co. of N. Am., 507 F.Supp.2d 1196, 1210 (D.N.M. 2007) ("Whether there is a Class 1 insured under the Policy thus depends on whether or not the named insured is an 'individual.'"); Rehders, 135 P.3d at 247 (noting that "the UM endorsement limits Class I insureds to those policies in which the named insured is designated in the Declarations as an individual").

The Nationwide policy here identifies a second category of insureds: persons who are covered because they are occupying a covered auto. [Doc. 15; Exh. B at unnumbered 13]. This category is what New Mexico law designates as Class 2 insureds. Gamboa, 726 P.2d at 1388 (holding that "second class insureds are covered only because they occupy an insured vehicle").[1]

---

[1] The Nationwide policy also identifies a third class of UM insureds (not relevant here): persons who sustain consequential damages. [Doc. 15; Exh. B at unnumbered 13]. New Mexico

Although they avoid the Class 1/Class 2 terminology and claim it is not relevant, Defendants are essentially arguing that Paul Gonzales was a Class 1 insured; in other words, that coverage must be afforded even though he was not occupying a covered vehicle at the time of the accident. Defendants' argument is at odds with both the express language of the policy and New Mexico jurisprudence regarding UM coverage. Class 1 coverage, which "follows" the "Named Insured" and members of his or her household, is available only if the "Named Insured" is an individual. Here, the named insured is a corporation, Gonzales Family, Inc. Accordingly, the policy at issue here does not afford Class 1-type coverage.

Defendants assert that the Class 1/Class 2 distinction is relevant only to the question of stacking. [Doc. 18 at 7 & n.1.] Generally speaking, Class 1 insureds may "stack" coverages and Class 2 insureds may not. Rehders, 135 P.3d at 246 ("Class I insureds may stack all uninsured motorist policies purchased by the named insured because those policies were purchased to benefit the named insured and his or her family, but Class II insureds may only recover under the policy on the car in which they rode because the purchaser only intended occupants to benefit from that particular policy.") The distinction is relevant to stacking, as Defendants argue, but it also has consequences with respect to coverage in the first instance. In addition to being entitled to "stack," Class 1 insureds have coverage that "follows" them no matter where they are when the accident occurs, as discussed above. Class 2 insureds, on the other hand, generally may not stack, and are covered only if they are

---

law also recognizes this third class of insureds. Rehders, 135 P.3d at 246.

occupying a covered auto. Here, Paul Gonzales was not a Class 1-type insured, nor was he occupying a covered auto. Thus, he is not an "insured" for purposes of this accident.

Defendants also argue that if the definition of "insured" only includes those occupying a covered auto at the time of the collision, then the second sentence of paragraph B.2.a— "This includes the Named Insured's . . . 'employees', directors or shareholders"—is rendered superfluous. [Doc. 15 at 8–9]. The second sentence is not superfluous, however, when read in context with the entire UM endorsement. See Rummel, 945 P.2d at 976 (insurance contract must be construed as a whole, including its declarations, endorsements, and any other attachments). It serves the purpose of modifying the first sentence of paragraph B.2.a. The first sentence states that only those occupying a covered auto (or temporary substitute) are "insureds" under section 2.a. The second sentence begins with the phrase "[t]his includes. . ."—evidencing an intent to modify the first sentence. The second sentence indicates that this same requirement—the requirement of occupying a covered auto—also applies to the Named Insured's partners, members, employees, directors, or shareholders. [See Doc. 15; Exh. B at unnumbered 13].

Defendants are essentially arguing that the second sentence indicates an expansion of the definition of "insureds" to include not only anyone occupying a covered auto (or a temporary substitute), as stated in the first sentence, but also employees, directors, and shareholders of the "Named Insured" corporation. Defendants' interpretation conflicts with the plain meaning of the insurance contract. If the second sentence had been intended to provide coverage for employees, directors and shareholders, without regard to whether they

are occupying a covered auto, as Defendants argue, then section B.2 would have followed a structure similar to section B.1 where Class 1-type insureds are defined in a separately numbered paragraph. [Doc. 15; Exh. B at unnumbered 13]. Instead, employees, directors, and shareholders are included in the same paragraph as insureds who are covered only because they are occupying a covered auto. [See id.; Exh. N at unnumbered 13].

Finally, Defendants contend that public policy concerns dictate that "any attempt to avoid offering uninsured motorist coverage should be strictly construed in favor of coverage." [Doc. 18 at 10]. Courts reject this argument when the insurance policy is free of ambiguity. Bonham, 507 F.Supp.2d at 1214, 1215 (citing Benns v. Continental Cas. Co., 982 F.2d 461, 464 (10th Cir. 1993)). Indeed, there is nothing inimical to public policy in denying uninsured motorist coverage if the policy as written supports such a denial. See Bonham, 507 F.Supp.2d at 1215. Because the insurance policy here is clear and unambiguous, the Court rejects Defendants' public- policy argument. See Benns, 982 F.2d at 464.

### III. CONCLUSION

On the basis of the foregoing, given the plain language of the insurance policy at issue, and in light of New Mexico case law, the Court concludes that Paul Gonzales was not an "insured" for purposes of uninsured motorist coverage here. Though he was an officer and employee of Gonzales Family, Inc., the "Named Insured" corporation, he was not occupying a covered auto at the time of the accident. The Nationwide policy at issue provides coverage to only those officers and employees occupying a covered auto.

Additionally, contrary to Defendants' arguments, public policy does not require coverage in these circumstances. Finally, because Defendants' professed expectations of coverage are unreasonable as a matter of law, and because the parties were permitted to conduct discovery through February 13, 2009, there is no demonstrated need for a continuance to permit them to engage in further discovery. The policy language is unambiguous, and Defendants have failed to meet their burden under Rule 56(f).

For the reasons stated in this opinion, Nationwide's motion will be granted.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion for Summary Judgment* [Doc. 14] is **GRANTED**;

**IT IS FURTHER ORDERED** that this matter be and hereby is **DISMISSED WITH PREJUDICE;**

**SO ORDERED** this 9th day of September, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge